When addressing statutes, we begin with the understanding that Congress says in a statute what it means and means in a statute what it says there. When the statute's language is plain, the court has an obligation to enforce the statute and not deviate from it. And that was the late Justice Scalia in the Supreme Court case of Hartford Underwriters Insurance Company. We were here before on the Consolidated Appeal dealing with the issue of timeliness, and at that time in the decision of Cairn v. Home Capital dated 2013, the Honorable Judge Murphy in the dissent, concurring in part, dissenting in part, recognized what Justice Scalia had already said and said when a statutory text is clear, the sole function of the court is to enforce the plain language of the statute. And she also, at that time, recognized that there was no dispute or any doubt that the Cairns had effectuated their right of rescission under the plain language of TILA Section 1635A, and that they had in fact followed the requirements that they needed to assert in the first place it's a self-defecting statute. This is, in a sense, a case of first impression in the sense that I was unable to find any case law in which, as here, a lender was given a pass, that they didn't have to comply with TILA, a remedial statute to be construed in favor of lenders. I mean, it's not in lenders, consumers. What definition of TILA do you assert? That was not followed? Yes. That's a good question, Your Honor. It was Section 1635B, which is the procedure that is in place that when a valid rescission is exercised within 20 days after receipt of that notice, the creditor shall, the word shall is used, not maybe, not only if it fits what we want to do, shall return to OBIGOR any money or property. It gives a mechanism on what they need to do and it's a condition that they need to tell the borrower how much do you still owe, what do you need, you know, that type of thing. There's a procedure here. In 20 days, they have an obligation to independently look at the TILA disclosures to see if they're accurate and then to make a decision to admit or deny whether or not rescission exists. Is it totally clear that a valid rescission was made in this case? That was the next step. First you decide was it a timely exercise and then if it was valid. I offered to the court that yes, it was. In this case, we've consistently stated that there was an insufficient number of TILA disclosures. There should have been two, not one. Correct. And then what happens is, and then the other part was the inaccuracies of the finance charges, which is a fact-intensive analysis. In this particular case, I'd like to address the fact that there's also, and I believe it's error, to not follow the case's binding precedent of Bank of America versus Peterson, in which the very same counsel I was with in front of the lower court didn't even so much as mention it in their brief. I later found it when I went back to my office and alerted the court. So the court was intentionally looked at that case and decided, does it apply, does it not apply? And in this particular case, I am of the opinion, and there's no way to otherwise reconcile it with the statute. The court, for whatever reason, ignored what this court had found. And that's namely that, in fact, it's in the decision of the case, when deciding a failure to rescind claim, taking the evidence in the light most favorable to the Petersons, in this case it's the Karens, the borrowers, their testimony rebuts the presumption of delivery and creates a genuine issue of material fact for trial. And it cites the Stutzka case from the circuit, which is a 2005 case. In that case, they concluded delivery was rebutted based on a borrower's affidavit. That's what we have here. Detailed testimonial affidavits of the Karens, coupled with the evidence, which is, there's three different sources for these things. There's what the Karens got at the closing, which is exhibit one to their complaint, and then what the title company had in their records, and then independently what the lender had. All three of those sources had only one disclosure statement, whereas there were two notices of cancellation, which is required two for each borrower. It was consistently that way. The obvious inference from that is there was only one given. And then I'd also like to point out that previously, counsel for Bank of America was before this court, and I cite to the testimony, I believe there was a judicial admission that only one was required, whether it be a backdrop argument or not, but that was clearly a misstatement of the law. And the cite to the online transcript from that case from 2011 is footnote 17 of the main brief. Attorney's statements during oral argument are oral admissions, and that's United States versus Willmar. And it was an abuse of discretion for the lower court to not allow us to rely on that. When it came time to argue or cross motions for summary judgment, at that point, they abandoned the argument. Even on the transcript, you'll see that I cite that counsel said, well, that was our argument before in the alternative that you only need one, but we've abandoned that argument for purposes of now. So there's no dispute that you need two, one for each borrower. But to rebut that presumption of receipt, which is 1635C, you need the minimal, and this is where the court erred, you need a low burden of production, not persuasion. The threshold is, in the language in the statute, again, going back to statutory interpretation, receipt of delivery does no more than create a rebuttable presumption. It doesn't shift the burden. And once you rebut that or put evidence into the record that shows we have evidence that this did in fact happen, it destroys that presumption. And then the burden sticks with the lenders that should under TILA. How long did your clients pay on this loan before they gave notice that they didn't get two copies of the, let's see, it was a $404,000. It was a $404,000 loan, 54% loan to value. The loan closed in their homes on December 30th, 2006. They made payments for at least a year or two. What happened was they realized that the predatory subprime loan they had with Countrywide, that they weren't allowed to refinance as they were represented. It was 12.55%. And as you know, Countrywide is out of business for a reason. So this isn't a normal loan. This is a loan where these people, this is their home, they lived there for two decades, and then they go and refinance, made a bad deal, tried to get out of it by doing the notice of rescission. That's the reason you give the notice to cancel. And then it's up to the lender to do something. The lender in this case didn't do anything like they were supposed to. I thought they sent you some form letters at least. Yes. You're correct, Your Honor. Yes, Your Honor. They sent two form letters, but they only had 20 days under the statute which said, shall make a decision one way or the other. They were just waiting to see. And we believe they purposely waited until January 10th, the following year, to do it because if it goes beyond the three years that the loan closed, they were hoping that it would be untimely and it would be a moot issue, really. They wanted to do away with this loan not because they didn't have notice, but rather the terms and conditions of the loan were not conducive to a fair deal, is that right? Exactly. That's exactly right, Your Honor. The loan was toxic, it was predatory. It was from 2006. Those loans came to light a few years later. They weren't given. I have in my facts section where, and unfortunately they didn't keep their evidence, but we had a case where they were told by Countrywide, a couple years, we'll refinance it for you. And so obviously when you get to a point and you're paying that high of interest, you just can't get ahead. And so they were stuck. This is too high, we don't get the deal we have. By then the loan went to someone else and someone else didn't have the complete files of Countrywide. So it was a huge disadvantage for my clients. They were stuck in a quandary. They looked at this and they had someone independently look at their documentation. By the way, they did try to modify the loan and ironically the loan modification was granted during this period after they gave a notice of rescission. So we're dealing with big banks and that's the other reason for TILA. It's supposed to be remedial legislation to help these lenders. They can't possibly compete or be on fair footing with people who can afford the biggest law firms, the most polished attorneys to show up and argue for them. I mean, these are little people. These are individuals, and again, they own this house. They raised their children in this house only to have 15, 20 years later be faced with this loan that didn't comply with TILA. So that's really unfair to not have the lender do something. And there's a reason for the statute. It's a self-mechanism. Just like in Peterson. Do you want to save time for rebuttal? Yes. Oh, I'm sorry. At some point, yeah. You're into your rebuttal. Oh, I'm into my rebuttal. I didn't realize that. It started at 15. The clock started at 15. Okay. All right. Thank you. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. This case has gotten unnecessarily complicated, and I'm afraid I unintentionally contributed to that the last time I was here by arguing a timing rule on rescission that the Supreme Court ended up disagreeing with. So let me get to the bottom line here. When people borrow money against their house, either they have to pay the money back or they lose their house. There isn't a third option where they get the money for free. The last time we were here, this Court conclusively resolved all of the damages claims. There aren't any damages claims left. The only issue here is rescission. And you can't rescind unless you can give the money back. The Karens have never shown that they can, and all the evidence is to the contrary. So under this Court's versus Hughes, as well as the holdings of every other Court, there can't be a rescission. That is a sufficient basis for affirming here without getting into any of the other issues. But if the Court does get into any of the other issues on violations, there isn't an evidence of any violation here, and that's another basis for affirming. Well now, their affidavits are some evidence. You have to concede that, right? They have submitted their affidavits, Your Honor. And here's, let me tell you what my understanding of the rule is, and then our position on why they don't meet the rule. The rule is that the borrowers have to create and submit sufficient evidence to show why their prior signatures attesting that they got them should not be believed now. The quantum of evidence they have to submit has to be evidence enough that if it's believed it could avoid summary judgment or support a jury verdict. So the traditional judgment as a matter of law standard. I don't think there's any dispute over what that standard is. Yes, the rebuttable presumption may be out the window under Peterson, but we still have to look at the evidence. Is that your argument? Well, yes, that's like that, Your Honor. Although I think, you know, what my argument is, is that Peterson doesn't say that any conclusory affidavit is enough to rebut it. Peterson actually, you know, never makes that broad statement, nor does any other court. The Third Circuit decision, the Cappuccio, says that non-conclusory affidavits are enough. And I think that's the standard everywhere. This isn't... It's simply, rebuttable presumption simply shifts the burden of proof. Well, it's a burden of production. The burden of proof stays where it always is. I disagree with the other side. The burden of proof in a TILA case is on the plaintiff to prove a way. But here's what I'm saying. Just like Ashcroft v. Iqbal says that a conclusory allegation in a complaint doesn't count for anything, this Court has often held in other circumstances that a conclusory affidavit rebutting deposition doesn't create a fact. Are you familiar with the Tolan v. Cotton case? It's an employment discrimination case where the Fifth Circuit was summarily reversed because they said there was just an affidavit by the plaintiff in an employment discrimination case. And that affidavit, the Fifth Circuit said was all there was, that wasn't enough. And they were summarily reversed. You're not familiar with that case? I've got to admit, Your Honor, I'm not familiar with that case. Proceed. You've got the point of it, though. So do you think they said enough or not? No. No, they didn't. And here's the deal. If you were coming in fresh and you hadn't previously signed a form saying you got it, then you can be pretty bare bones to establish a fact. But if you've previously signed a statement saying that you have received, you've got to do enough to explain why that previous signature shouldn't be believed. And here they don't. They have long affidavits, but I want to point out a couple of things that Your Honors may have already noticed. First of all, those affidavits were submitted for the first time in 2015. Pause for that. That's nine years afterwards, and it's five years after this case started. That's the first time they came forward with those affidavits. They weren't here the previous time around. The second thing is that although they're about 30 paragraphs long, they're word for word identical, except for switching out the pronouns. It's interesting, both Mr. and Mrs. Curran claim in their affidavits that they were the ones that secured the forms and kept them the same, when obviously it wasn't both of them. So here's what they never do sufficiently. They don't explain why it was that they signed something before saying the opposite, and now why their new statements are the ones that should be believed and create a fact dispute. This situation, like I said, is no different from somebody who gives deposition testimony the first time and then does an affidavit rebutting it. The simple fact of an affidavit later isn't enough to carry the day. You've got to say enough to explain why the difference. Otherwise this means nothing. Going and signing forms means nothing. If all you have to do is just do an affidavit saying I didn't, it's like the mailbox rule. Why is there a mailbox rule that mailing? Because it's easy to say I didn't get it, and if that's enough, there's a fact dispute every time. So that's our understanding of what the rule is. That's our position on why there isn't a fact issue. Peterson's different. I understand the law to be that the Supreme Court has reserved the issue of materiality of TILA violations, or to put it differently, whether a TILA violation could be so immaterial it's not a violation. Do you have any law on material? I should ask you the real question. I don't think the Supreme Court has ever addressed that. And just to be clear, Your Honor, our position on this appeal, we aren't arguing about the materiality of the one versus two. That's not something that's in dispute. So we're... Did you say it is material? We're assuming for purposes of this appeal that if they have sufficient evidence that they got only one, not two, that that would be sufficient to trigger a right to rescission. If they had sufficient evidence to get there and if they met the other requirements. Thank you. So, yep, I want to be clear about that. So Peterson, Your Honor, adopts the rule that I've just expressed. It came out differently because the facts were different. There are super detailed testimony from Mrs. Peterson there that they got no documents and that the lender a month later confessed error and sent them there. And then four years later, I think the lender says, I'm sorry, we've lost all copies. We don't even have a copy of the mortgage. Given all that, that's plenty of evidence to rebut a presumption, right? You don't need a broad rule to get there. Stutzka is the same thing. The district court there just didn't consider anything. And there are two affidavits, one from the borrower and one from the record keeper. Capuccio is the same. And I could keep going. I don't think there's a difference in the law in these cases. There's just a difference in the facts. This case is a close case. But I've explained to you why. I don't think there's enough here to explain why the prior signatures are wrong so you don't get over it. But assume, you know, so now, you know, if there's no violation, we're just done. But assume, though, that there was, they can establish at least a fact issue on a violation that we would then go down and have a trial on. A trial is unnecessary in this case because they can't give the money back. They can't tender. And the inability to tender is an independently sufficient grounds to deny rescission. Have you ever told them an amount of money they've got to give back? You know, Your Honor, in the course of this proceeding, we haven't given a precise dollar amount. And I know they talk about the difference between $700,000 and $400,000. The original loan was $400,000 and $4,000. They've paid approximately $5,000 of principal. The balance they'd have to tender would be right around $400,000 because in a rescission, you wipe out all the finance charges. But it doesn't matter whether it's $300,000 or $400,000 or $250,000. They've shown no ability to tender any of those amounts here. And let me just go through the factual record on this because we briefed this up below. This is fully preserved. The district court didn't reach it. But there's nothing to preclude this court from doing it right now. And I just want to be clear on that. They have never submitted any evidence that they could tender the money. And since the last time they made any payment on this loan was in 2008, before Barack Obama was elected for his first term as president, there's really good evidence that they can't do it. But there's more than that. Because in the record, we have some of the opinions from the state law foreclosure process that has been going in parallel with this. And in there, they moved to stay that process. And the district court said, I'll grant you a stay if you can pay a bond, which would be about the amount of their mortgage payments. They said, great, we'll move for that stay and do it. And then they never paid the bond. So a year later, the court said, no, I really mean it. If you aren't going to pay the bond, I'm going to dismiss the stay and we're going to go forward in foreclosure. And they still didn't pay the bond. And that's in the record. It's Appendix 298 through 303, where the state law opinions reflect that they couldn't do that. They have no evidence here of their ability. And we served discovery on them asking about their ability, and they didn't answer it. So our discovery requests in here are at Appendix 140, and our affidavit showing that they didn't answer and provided... Do you ask for admissions on that point, or just open-ended discovery? Interrogatories and document requests. Open-ended discovery. There isn't a binding admission. Right. Yep, you're right. So there's that. My point on this is that the burden is on them to prove tender. And not only have they not met that burden, but there's evidence in the record from foreclosure that they can't. And that's apart from waiver just as ordinary waiver, because we briefed this up and they gave nothing to the district court. So here's the rule. I heard Ms. Patryk arguing that Jessenowski, in their view, means that as long as the lender doesn't respond to the notice of rescission, all is waived. Everything goes away. The security interest disappears. That's wrong as a matter of law. There's no case that holds that. You mean as a matter of state law? As a matter of federal law. What federal law bears on that issue? That sounds to me like state law, mortgage, property rights, you know, garden rule stuff. No, it's the rescission right under the Truth in Lending Act, Your Honor. It's under Sections 1635A and B that creates this ordinary process, where as a matter of the Truth in Lending Act, the borrower can send a notice of rescission, and then this series of events takes place. Their view is that if they send the notice of rescission and the borrower doesn't do something, bring a lawsuit, I think, within 20 days, then the lender is deemed to waive everything. The security interest disappears. You can't ever get it back. They just keep the money. That's what they're arguing. That's wrong under federal law. This Court's opinion in FDIC versus Hughes holds that no, the courts can require tender before there's any releasing of the security interest. We've cited the other decisions from the other courts of appeals that have held the same thing. I think one of the clearest is the Yamamoto decision from Judge Reimer in the Ninth Circuit on this. But let me get back to where I started, you know, in terms of complications here. There are two different ways to affirm here. One way is to say they haven't produced sufficient evidence to create a fact issue on whether they got one versus two, and we've gone through that. The other way is to say, put that aside, regardless of whether they can, they can't rescind unless they can give the money back. And there's a complete failure on their part to give any evidence that they can give the money back. But you just can't loan money and then not pay it for eight years and expect that you're going to get the money for free and keep your house. That's not the way the law works. So that's it. Your Honors, I'm going to answer other questions, but I want to briefly touch on two other points. One is, they have raised an alternative source of violations for the first time on remand here and then on appeal. They argue that some of the amounts of the finance charges were wrong. They talk about the property insurance, those sort of things. That would be, you know, just to put this in the big framework, they're trying to prove a TILA violation so they can prove a rescission. The violation they preserved is the one versus two. This all other set of damages arguments is something that isn't preserved. It was waived. They didn't raise it in their complaint. They didn't raise it in the first summary judgment. Judge Beam and Judge Murphy, you may remember, nobody ever talked about this damages stuff the first time we were here. That's because they didn't brief it. It's completely waived. And so, as to their arguments that the property insurance amount was wrong, that there was interest that should have been refunded, that there are charges, all of those are waived. This court's decision in Crest says if you didn't raise it on the first appeal, you can't start over on remand. It's just gone. Do you believe that the Jezinoski case and its part where it talks about rescission and tendering and all that, do you believe it casts in doubt the Hughes case and other cases like that? You know the paragraph I'm talking about? Yeah, I sure do. Okay. What do you think that paragraph means? Well, let me say, I don't think that casts them in doubt because earlier on in the case, Justice Scalia is very clearly referring to a conditional right to rescind. That's the phrase he uses. Within three days, it's absolute. After that, it's conditional. If you don't meet the condition, you don't have the right. That's what it was. The issue in front of the Supreme Court in Jezinoski is what do you have to do to exercise the right? And what do you have to do within the three-year period? Is the only thing you have to do is send the notice or do you also have to sue? The Supreme Court said, nope, all you have to do is send the notice. There wasn't any issue in front of it of the court's ability to require tender. There wasn't any issue in front of it about what happens to the security interest in voiding it. All of the decisions, Your Honor, that have come down since Jezinoski have held that Jezinoski does not wipe this out and hold that even invalid rescission notices wipe out a security interest. Now, you're talking about federal courts and circuit courts? I'm talking about federal courts. There hasn't been... I think the Pennsylvania Supreme Court went the other way. Do I read my notes right? That may be right, Your Honor. I don't recall here. There hasn't been any published circuit court, federal circuit court of appeals decision after Jezinoski is on this. All there is are about a dozen district court opinions. I didn't supplement our authority with that because unpublished... There's a Ninth Circuit unpublished, right? Yes. It takes your position. That's right. But it's unpublished. Yes. Yes. There isn't any binding circuit court law either way. That's what you meant by that statement. Yes. That's right. If Your Honors have other questions, I'll address them. Otherwise, my time is up. All right. Thank you, Your Honors. First of all, I'm very troubled by blatant misstatements of law. The burden of proof in TILA, which is again a consumer remedial statute, remains always with the lender to prove compliance with TILA. And this is important once you give the notification that you're going to rescind. The statute's very clear under Section 1635B that the lender then has 20 days in which to look at the documents, engage in its own independent investigation, and make a decision. Here, they did not do that. And the judge below did not make them do that. The law... You were correct, Your Honor, Judge Benton, that Jezinoski did in fact say, Justice Scalia said, held that the common law requirement to condition rescission on proof of tender or ability to tender was abrogated by statute, by the TILA statute. And that Kiran's... He doesn't use the word abrogated or words like that, right? You're summarizing his view? Yes. Exactly. Exactly. Right. And he said that it's no longer contingent on that. In fact, it would be conditional rescission, and it's not conditional rescission. If you look at the very beginning, Kiran's aren't expecting something for nothing. That's a good impression to try to make us look in a bad light. But in the Kiran's notice of rescission, it's Exhibit 3 to their complaint. It's in Appendix 56. They say, we hereby surrender the property or its equivalent, meaning the loan proceeds, to determine by application of all proceeds since origination, the exercise of rescission. They were asking, what do we need to rescind the loan? They weren't at any point saying they weren't going to tender the things. To say there's no proof of ability to tender, first of all, it's not a requirement under TILA. Secondly, at all times they were willing to tender. The state court case, that would... A bonding issue and a miscommunication between counsel is too high to meet at the time. That is not any kind of persuasive evidence in this court, Your Honor. And to say they didn't violate TILA, therefore they don't have to comply with it. I mean, what good does it do to have a statute? If you just say, oh, you know, you guys, you don't have any basis for it. You're just trying to get out paying your loan. And then afterwards, the judge backs into, oh, yeah, there's no violation. And the court, by the way, they argued waiver of the second argument, inaccurate disclosures, which by the way, is in our complaint. And the court, instead of saying, yeah, they waived it, they can't bring it up again, Judge Doty stepped right into it and started arguing piece by piece the different issues we raised for the finance charge. And he did it wrong because you got to do the sum of all charges. And the way we do it with all due respect is it's a fact-intensive inquiry. So that's another fact issue that warrants sending this back. But I want to get back to Peterson. It's just plain wrong to say that the law is as FDIC and all those other cases. Peterson had his own facts as do all cases, but nowhere in that decision, and it was the case from your circuit, does it say this case is limited by its facts to caution you not to use it? No. Instead, it's got general citations to Stutzcott, and it refers to an affidavit was sufficient to rebut the presumption. Not a burden of proof. He's got the wrong burden of proof, so he's wrong right there. All we need to do is burden the production, and then you have a right to go to court. It depends on what the affidavit says. Correct. And in this case, it was factually detailed. And there was additionally to this the other evidence. We're not just relying on the affidavits. There were other documents provided that showed only one disclosure statement, whereas there were two notices of cancellation. If the argument's right, we don't have to keep all the copies, then why did you have two of each of the notices of cancellation? That's an assumption. We're entitled to the benefit of the inference in our favor, and that didn't happen. Thank you, Your Honors. Thank you. Thank you both for your argument. The Kiernan v. Home Capital case is submitted to court for argument. I mean, for decision. Sorry about that. Submitted for decision. Next case. Yes, Judge Benton. Final case for submission this morning is 16-3186, Brittany Tovar v. Central Health. Thank you. Ms. Gaulding.